UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

MOSDOS CHOFETZ CHAIM, INC.,

                              Debtor.

-----------------------------------------------------X

RABBI MAYER ZAKS,

                              Appellant,

        v.

MOSDOS CHOFETZ CHAIM, INC. *and*
RABBI ARYEH ZAKS,

                              Appellees.

No. 22-CV-6201 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Robert A. Spolzino, Esq.
Abrams Fensterman LLP
White Plains, NY
*Counsel for Plaintiff-Appellant Rabbi Mayer Zaks*

David T. Imamura, Esq.
Debevoise & Plimpton LLP
New York, NY
*Counsel for Plaintiff-Appellant Rabbi Mayer Zaks*

Michael L. Levine, Esq.
Law Firm of Michael Levine, P.C.
Scarsdale, NY
*Counsel for Defendant-Appellee Mosdos Chofetz Chaim, Inc.*

Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
New York, NY
*Counsel for Defendant-Appellee Rabbi Aryeh Zaks*

KENNETH M. KARAS, United States District Judge:

Rabbi Mayer Zaks ("Rabbi Mayer" or "Appellant") appeals from the June 30, 2022 Orders of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), dismissing Appellant's Complaint in an underlying adversary proceeding and denying Appellant leave to amend his Complaint in the same proceeding.  (*See* Not. of Appeal 1 (Dkt. No. 1); Letter from Robert A. Spolzino, Esq. to Court (August 18, 2022) (Dkt. No. 5); Order (Dkt. No. 6).)  For the reasons stated below, the Orders of the Bankruptcy Court are affirmed.

## I.  Background

The underlying adversary proceeding arose out of contentious litigation spawned by the bankruptcy of Mosdos Chofetz Chaim, Inc. (the "Debtor") and ensuing disputes between Rabbi Mayer and his brother, Rabbi Aryeh Zaks ("Rabbi Aryeh," with the Debtor, the "Appellees").  Below are relevant facts that are not disputed by the Parties to this Appeal.  Unless otherwise noted, the Court cites to the Appendices submitted by the Parties.  (*See* Appellant's App. (Dkt. Nos. 13–14); Appellees' Suppl. App. (Dkt No. 17-1).)[1]

### A.  Factual Background

#### 1.  Proceedings in the Bankruptcy Court

In 2012, the Debtor filed for Chapter 11 Bankruptcy (the "Bankruptcy").  (Appellant's App. A-1.)  In 2017, the Debtor reached a global settlement of claims against it, which the Bankruptcy Court approved.  (Appellees' Suppl. App. 3–4.)  On August 16, 2019, the Debtor filed its plan of reorganization (the "Plan") for the Bankruptcy Court's approval.  (*Id.* at 5–43.)

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper right corner of each page.

Appellant's Appendix was submitted on the public docket in two separate volumes with continuous pagination.  For ease of reference, the Court refers to the internal pagination of Appellant's Appendix.

The Plan contemplated the sale of the Debtor's property to a religious corporation if the Debtor was unable to continue to meet its required monthly payments to its secured creditor.  (*Id.* at 23–25.)  The Plan also created four classes of claims: Priority Non-Tax Claims (Class 1), Secured Tax Claims (Class 2), TBG Radin Secured Claim (Class 3), and Unsecured Claims (Class 4), each of which was to receive a proposed distribution from any potential proceeds of the sale of the Debtor's property.  (*Id.* at 20–23.)

All Classes voted to accept the proposed Plan, and a certification (the "Ballot Certification") to this effect was filed with the Bankruptcy Court on September 26, 2019. (Appellant's App. A-269–70.)  As relevant here, the sole Class 3 creditor, TBG Radin, submitted a ballot voting to accept the claim.  (*Id.* at A-271–72.)  In total, eight Class 4 creditors, owed $5,688,573.89 by the Debtor, also submitted ballots approving the Plan.  (*Id.* at A-270.) Specifically, Munish Weintraub ("Weintraub"), a Class 4 unsecured creditor owed $150,000, submitted a ballot accepting the Plan.  (*Id.* at A-279–80.)  Weintraub's ballot represented 12.5% of all voting Class 4 claims and 2.63% of the aggregate dollar amount of Class 4 ballots cast. (Appellees' Br. at 15 (Dkt. No. 17).)

On October 2, 2019, the Bankruptcy Court approved the Plan (the "Confirmation Order").  (Appellees' Suppl. App. at 44–59.)

### 2.  The Adversary Proceeding

On March 30, 2020, Appellant filed a complaint (the "Complaint") seeking, pursuant to 11 U.S.C. § 1144 ("§ 1144"), to revoke the Confirmation Order on the grounds that it had been procured by fraud on the part of Rabbi Aryeh.  (Appellant's App. A-3–7.)  As relevant here, Appellant alleged that he was a "co-manager of the Debtor."  (*Id.* at A-4.)  Additionally, the Complaint alleged that, during voting for the Plan, Rabbi Aryeh "orchestrated the forged

signature of [Weintraub]" on Weintraub's ballot in support of the Plan and "used his own personal address" on Weintraub's ballot.  (*Id.* at A-6.)

On May 1, 2020, Appellants filed a Motion To Dismiss the Complaint.  (*Id.* at A-39–82.) On June 3, 2022, Appellant filed his Opposition, a Motion To Amend his Complaint, and accompanying papers.  (*Id.* at A-212–70.)  Appellant's proposed Amended Complaint (the "Amended Complaint") included multiple new allegations concerning fraud during the confirmation process engaged in by creditors besides Weintraub.

First, the Amended Complaint alleged that the ballot of the sole Class 3 creditor, TBG Radin, was fraudulent and should not have been counted for multiple reasons, including that "Joshua Nussbaum ["Nussbaum"] signed the . . . [b]allot. . . . [and] . . . at the time he signed [it], Nussbaum was not an authorized representative and lacked the authority to sign a ballot . . . on behalf of TBG Radin[;]" that TBG Radin did not own the debt it voted at the time the Ballot Certification was submitted, and that TBG Radin was an undisclosed insider as Nussbaum was acting as an agent of Rabbi Aryeh.  (*Id.* at A-234–38.)

Second, the Amended Complaint alleged that the ballot submitted by Class 4 creditor Yeshiva Chofetz Chaim, Inc. ("YCC") should not have been counted because Rabbi Aryeh, who controlled YCC, voted to accept the Plan but was not disclosed as an insider on the Ballot Certification.  (*Id.* at A-239–40.)

Third, the Amended Complaint claimed that three ballots submitted by TBG Radin as a Class 4 creditor were fraudulent and should not have been counted because Nussbaum, who signed the ballots, was not authorized to do so.  (*Id.* at A-240–41.)  The Amended Complaint also alleged that TBG Radin's vote should not have been counted because Nussbaum was the

son-in-law of Rabbi Aryeh, and thus TBG Radin was controlled by an insider.  (*Id.* at A-242–43.)

Fourth, the Amended Complaint asserted that the ballot of Class 4 creditor 645 Springdale Holdings, LLC ("645") was fraudulent because, "upon information and belief," Rabbi Aryeh had caused the signatory of the ballot to sign it on 645's behalf and so the ballot should not have been counted because it was submitted by an insider.  (*Id.* at A-243–44.)

Fifth, the Amended Complaint asserted that Class 4 creditor Mikhail Leibov's ("Leibov") vote was fraudulent and should not have been counted because "upon information and belief" and in light of a check written by an entity controlled by Rabbi Aryeh to Leibov after the confirmation of the Plan, Rabbi Aryeh had secured Leibov's vote for the Plan by promising to pay him a specified amount after the Plan was confirmed.  (*Id.* at A-244–45.)

Sixth, the Amended Complaint averred that Class 4 creditor Ezra Beyman's ("Beyman") ballot was fraudulent and should not be counted because Rabbi Aryeh had made a false representation to Beyman that Debtor would not sell its property if the Plan was confirmed.  (*Id.* at A-245.)

Finally, the Amended Complaint asserted that if the Bankruptcy Court had been aware of the fraudulent ballots, the Plan would not have been confirmed because neither Class 3 or 4 would have voted for the Plan as the sole Class 3 vote would not have been counted and seven of the eight Class 4 votes would not have been counted.  (*Id.* at A-246–47.)  Based on these allegations, the Amended Complaint requested that the Bankruptcy Court revoke the Plan.  (*Id.* at A-247.)

On June 28, 2022, the Bankruptcy Court held a hearing on the pending Motions.  (*Id.* at A-449–83.)  During the hearing, the Bankruptcy Court determined that Appellant's Complaint

should be dismissed for lack of standing because Appellant, as a co-manager of the debtor, could

not meet prudential standing requirements and because Appellant, as a manager of the debtor,

was not a party in interest within the meaning of the Bankruptcy Code.  (*Id.* at A-457.)  The

Bankruptcy Court held in relevant part:

> [Appellant] is asserting his standing in this adversary proceeding based on his
> capacity as . . . a co-manager of the debtor at the time that the adversary proceeding
> was commenced . . . [but] lacks standing because . . . he is . . . asserting the rights
> of the [D]ebtor when he doesn't have the power to do so.  That power residing
> instead in the [D]ebtor's board of trustees, an issue that I've already decided [in an
> order issued in a separate adversary proceeding], albeit that [order is] on appeal.  In
> other words, he's asserting the rights of someone else [i.e., the trustees of the
> Debtor], which . . . is precluded under the doctrine of prudential standing, as well
> as party in interest standing in bankruptcy cases.

(*Id.* at A-457–58.)[2]  The order the Bankruptcy Court referred to was filed on April 2, 2021 in

adversary proceeding no. 20-8949 and incorporated "the reasons stated . . . in [the Bankruptcy

---

[2] The Bankruptcy Court also cited caselaw to support this conclusion and noted that the
more common factual patterns in which standing was an issue were where "managers are
asserting the rights of a debtor when . . . a [C]hapter 7 trustee has taken over management of the
debtor or where creditors or shareholders of a creditor assert rights of that creditor who [itself
has] not asserted those rights" but that the same reasoning applied in Appellant's circumstances.
(Appellant's App. A-457.)
     The Bankruptcy Court explained that Appellant "could, of course, assert rights as a
manager, but [Appellant] has not defined what those would be given that it has already been
determined that the board of trustees in fact controls the [D]ebtor and controlled it at the time of
the alleged cause of action in the complaint."  (*Id.*)
     The Bankruptcy Court also noted that "the parties in interest with standing to assert a
fraud claim [under § 1144] are the parties that were themselves defrauded[,]" such as "a
creditor[] or [one with the power] to act derivatively on behalf of the debtor or through speaking
for the board[,]" but observed that Appellant was not "asserting a claim on any of those grounds"
in the Complaint.  (*Id.* at A-458–59.)
     Finally, after this thorough analysis of the standing issue, the Bankruptcy Court assessed
Appellees' contention that the Complaint should be dismissed as untimely filed and declined to
dismiss the Complaint on that basis.  (*Id.* at A-460–61.)

Court's] bench ruling [on] March 26, 2021[.]" (Appellees' Suppl. App. 61.)[3]  As relevant here, the Bankruptcy Court stated in its March 26, 2021 bench ruling that:

> [i]t has been acknowledged that the identity of the reorganized debtor's board of trustees and corporate governance did not change between the confirmation date and the post[-]confirmation date transfer [of] the property. . . . It is the board [of trustees] . . . that took those actions [to transfer the property].  In other words, it was not a fictitious or unauthorized board that did same.

(Tr. of March 26, 2021 Hg. 27–28 (Dkt. No. 160, 20-AP-8949 Dkt.).)

The Bankruptcy Court then turned to the sufficiency of the Complaint.  (Appellant's App. A-461.)  The Bankruptcy Court evaluated the Complaint on a paragraph-by-paragraph basis to determine whether each of the four paragraphs alleging fraud was sufficiently pled to comply with the requirements of Federal Rules of Civil Procedure 8 and 9(b), and, as relevant here, determined that the only allegation that complied with the requirements of Rule 9(b) was that Rabbi Aryeh had forged Weintraub's signature on a ballot.  (*Id.* at A-461–67.)[4]  The Bankruptcy Court found that the Complaint must be dismissed because, accepting all non-conclusory allegations in the Complaint as true and drawing all inferences in Appellant's favor, Appellant had failed to state a claim for fraud under § 1144 as "[Class 4] would have accepted the plan without Mr. Weintraub's vote" and thus the Plan would still have been confirmed.  (*Id.* at A-466.)[5]

---

[3] As Appellant has noted, (Appellant's Br. at 29 n.7 (Dkt. No. 12)), the Bankruptcy Court erroneously stated that this order was issued on May 2, 2021 during the hearing, (Appellant's App. A-456).

[4] The Bankruptcy Court also noted several facts of which it could take judicial notice because they were contained in documents attached to the Complaint, including the Ballot Certification and Confirmation Order.  (Appellant's App. A-464–65.)

[5] The Bankruptcy Court noted that because it had already provided two separate bases for dismissing Appellant's Complaint, it declined to consider whether the Motion should also be granted based on the doctrine of equitable mootness.  (Appellant's App. A-466–67.)

The Bankruptcy Court then turned to Appellant's Motion To Amend. (Appellant's App. A-467.) The Bankruptcy Court denied Appellant leave to amend, explaining that the additional allegations of ballot fraud in the proposed Amended Complaint did not relate back to the date of the original Complaint because they alleged fraud on the basis of transactions not alleged in the Complaint and, in two instances, on theories not alleged in the Complaint. (*Id.* at A-469–76.) The Bankruptcy Court also noted that there was an independent basis to deny leave to amend, because granting leave would result in "undue . . . . prejudice to the parties . . . legitimately protected by [the Confirmation Order], namely, third parties, who are not alleged to be part of any fraud, including the [D]ebtor itself." (*Id.* at A-477.)

On June 30, 2022, the Bankruptcy Court entered separate Orders granting Appellees' Motion To Dismiss, (*id.* at A-433–34), and denying Appellant's Motion To Amend, (*id.* at A-435–36), for the reasons the Bankruptcy Court had stated on the record during the June 28, 2022 hearing.

B.  Procedural History

The Court describes the procedural history of this Action only as relevant to deciding the instant Appeal. Appellant filed his Notice of Appeal on July 21, 2022. (*See* Not. of Appeal.) On August 19, 2022, Appellant submitted a letter to the Court requesting to consolidate the appeal initially filed in this Action, which concerned the denial of the Motion To Dismiss, with the appeal of the denial of the Motion To Amend that Appellant had filed in a separate action. (Letter from Robert A. Spolzino, Esq. to Court (August 18, 2022) (Dkt. No. 5).) The Court granted Appellant's request on August 23, 2022 and consolidated the appeals. (Order (Dkt. No. 6).)

Appellant filed his brief and accompanying papers on November 19, 2022. (Appellant's Br. (Dkt. No. 12); Appellant's App.) Appellees filed their brief in opposition and accompanying

papers on January 9, 2022.  (Appellees' Br. (Dkt. No. 17); Appellees' Suppl. App.)  Appellant filed his reply brief on January 30, 2022.  (Appellant's Reply (Dkt. No. 18).)

## II.  Discussion

### A.  Standard of Review

District courts have jurisdiction to review final bankruptcy orders under 28 U.S.C. § 158(a)(1). *See In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (noting that district courts have jurisdiction to "review all final judgments, orders, and decrees of the bankruptcy courts" (quotation marks omitted)).  "[A] bankruptcy judge's order is final if it completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 885 (2d Cir. 1996) (quotation marks omitted).  In addition, the Court has an independent obligation to determine its jurisdiction to hear such an appeal.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

A district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law de novo.  *See Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the [d]istrict [c]ourt, we review the [b]ankruptcy [c]ourt's findings of fact for clear error, [and] its conclusions of law de novo . . . ." (citation and italics omitted)); *Am. Home Assurance Co. v. Enron Nat. Gas Mktg. Corp. (In re Enron Corp.)*, 307 B.R. 372, 378 (S.D.N.Y. 2004) ("A bankruptcy court's conclusions of law are reviewed de novo and its findings of fact for clear error." (italics omitted)).

A district court reviews a bankruptcy court's "[d]enial of leave to amend a complaint . . . for abuse of discretion." *In re Lyondell Chem. Co.,* 585 B.R. 41, 57 (S.D.N.Y. 2018) (citing *United States v. Continental Ill. Nat. Bank and Tr. Co.*, 889 F.2d 1248, 1253 (2d Cir. 1989)); *In re Ass'n of Graphic Commc'ns, Inc.*, No. 10-CV-6413, 2011 WL 1226372, at *2 (S.D.N.Y. Mar. 31, 2011) (same). "An abuse of discretion may consist of an error of law or a clearly erroneous finding of fact or a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding[,] cannot be located within the range of permissible decisions." *Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129, 145 (2d Cir.2009) (internal quotations and citations omitted); *see also Harris v. Albany Cnty. Office (In re Harris)*, 464 F.3d 263, 268 (2d Cir.2006) ("A . . . court abuses its discretion when it applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." (quotation marks and alteration omitted)).

    B.  Analysis

        1.  Dismissal of Appellant's Complaint

Appellant argues that the Bankruptcy Court's Order dismissing his Complaint for lack of standing and failure to state a claim must be reversed. (Appellant's Br. 26–40.)

           a.  Standing

A party invoking federal jurisdiction bears the burden of establishing its standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements; (2) federal court prudential standing requirements; and (3) the "party in interest" requirements under Section 1109(b) of the Bankruptcy Code. *In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013). Traditionally, prudential standing has included the "rule against the adjudication of generalized grievances, the rule prohibiting plaintiffs from asserting the rights of

10

third parties, and the rule barring claims that fall outside the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016) (quotations marks omitted). "Prudential limitations on standing are especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third parties for their own benefit." *In re Old Carco*, 500 B.R. at 691.

As relevant here, "[p]arty in interest," as used in 11 U.S.C. § 1109(b), is not defined in the Bankruptcy Code. *Krys v. Official Comm. of Unsecured Creditors of Refco, Inc.* (*In re Refco, Inc.*), 505 F.3d 109, 117 (2d Cir. 2007); *see also Roslyn Sav. Bank v. Comcoach Corp.* (*In re Comcoach Corp.*), 698 F.2d 571, 573 (2d Cir. 1983) (same). "[A]nyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992); *see also In re Global Indus. Techs., Inc.,* 645 F.3d 201, 210 (3d Cir. 2011) (explaining that § 1109(b) "has been construed to create a broad right of participation in Chapter 11 cases" (quotation marks omitted)). "Whether or not someone is a party in interest must be read against the purposes of Chapter 11, which are to 'preserv[e] going concerns and maximiz[e] property available to satisfy creditors.'" *Savage Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 61 (2d Cir.2011) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)). Generally, a party in interest must have a financial or legal stake in the outcome of the particular matter. *See Id.* at 60–61.

Appellant contends that the Bankruptcy Court had not previously found that the board of trustees, as opposed to Appellant and Rabbi Aryeh, controlled the Debtor, but this position blinks

11

reality.  (Appellant's Br. 28–31.)[6]  As noted above, the Bankruptcy Court specifically found in adversary proceeding no. 20-8949 that the board of trustees—not the Appellant and Rabbi Aryeh—took the necessary steps to lawfully sell the property owned by the Debtor in compliance with the Confirmation Order.  (Tr. of March 26, 2021 Hg. 27–28 (Dkt. No. 160, 20-AP-8949 Dkt.).)  Although the Bankruptcy Court did not state on the record in the March 26, 2021 hearing that the board of trustees controlled the Debtor, such a statement was unnecessary, as it is an obvious inference that the Bankruptcy Court could and did draw based on the board's lawful sale of the Debtor's most valuable asset in compliance with the Confirmation Order.

Moreover, Appellant himself appears to admit this fact.  Appellant asserts that the Bankruptcy Court's determination that the board of trustees controlled the Debtor is at odds with

---

[6] Appellant has also raised two alternative challenges to the Bankruptcy Court's reliance on its prior order determining the board of trustees controlled the Debtor, not Appellant. Appellant first argues that the Bankruptcy Court could not have relied on its order in the prior adversary proceeding because Appellant had appealed that order, thus divesting it of jurisdiction to "entertain an issue" addressed in the order. (Appellant's Br. at 27.) Appellant's argument is without merit because it is apparent that the Bankruptcy Court was not deciding any issue included in the prior adversary proceeding, but rather relying on the *facts* found concerning control of the Debtor in its previous order and accompanying bench ruling. (Appellant's App. A-457–58.)

Appellant's contention that the Bankruptcy Court "had no jurisdiction to decide on the standing issue" because of the pending appeal in adversary proceeding no. 20-8949 is nonsensical. (Appellant's Br. at 27.) While it is well-settled that the filing of a notice of appeal "divests the [lower] court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), Appellant has made no showing that standing was at issue in the appeal from adversary proceeding no. 20-8949. Moreover, even if standing were at issue, Appellant has not even suggested that the standing question raised in that appeal would in any way implicate the standing question before the Bankruptcy Court in the underlying adversary proceeding.

Appellant's citation to *In re Southold Dev. Corp.*, 129 B.R. 18 (E.D.N.Y. 1991) is inapposite, as the district court there held that the bankruptcy court was divested of jurisdiction over a plan of reorganization where *the same plan* had been appealed to the district court. *Id.* at 19. Here, Appellant is arguing that an appeal in adversary proceeding no. 20-8949 would prevent the Bankruptcy Court from ruling on an issue in the unrelated adversary proceeding underlying this appeal. Unsurprisingly, there is no authority to support this proposition.

the Confirmation Order (Appellant's Br. 31), which states that "[t]he Debtor/Reorganized Debtor will continue to be managed by Rabbi[] Aryeh and [Appellant][,]" (Appellees' Suppl. App. 49). However, as relevant here, the entire section of the Confirmation Order states:

> The Debtor will continue in existence post-confirmation as the Reorganized Debtor, and its *officers and directors* shall remain in place unchanged.   The Debtor/Reorganized Debtor will continue to be managed by Rabbi[] Aryeh and [Appellant]. The Reorganized Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under the Plan.

(*Id.* (emphasis added).)  Appellant asserts that the "clear implication of the . . . [Confirmation Order] is that. . . the debtor would be 'managed' by Rabbi[] Aryeh and [Appellant] *under the supervision of* the reorganized debtor's 'officers and directors. . . . [T]he [Confirmation Order] carved out roles for both the managers and the board of trustees[.]'"  (Appellant's Br. 31.)  Thus, Appellant *concedes* that the "officers and directors" identified in the Confirmation Order include the board of trustees and that the board has a supervisory role over Appellant and Rabbi Aryeh as co-managers.

Somewhat confusingly, Appellant then claims that the Confirmation Order implicitly delegates "the authority to act for" the Debtor from the board of trustees to "the co-managers." (*Id.*)  However, even assuming such delegation existed, Appellant in no way addresses how he, as only one of the two co-managers, would have standing—independent of the consent of his co-manager or of the board of trustees, which by Appellant's own admission has supervisory authority—to bring suit on the Debtor's behalf in the underlying adversary proceeding.  The Complaint stated merely that Appellant was a "co-manager" of the Debtor, not that he was acting on behalf of the Debtor with Rabbi Aryeh's consent or with the board of trustees' consent, (Appellant's App. A-4); nor does Appellant now make any claim that he was acting with either

Rabbi Aryeh's or the board of trustees' consent, (*see generally* Appellant's Br.; Appellant's Reply).

Thus, having reviewed Appellant's contentions and found them meritless, the Court affirms the Bankruptcy Court's determination that Appellant failed to meet his burden to establish prudential standing.[7]

### b.  Failure To State a Claim

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[7] Appellant also argues that the Bankruptcy Court erroneously concluded that he was not a "party in interest" within the meaning of 11 U.S.C. § 1109(b).  However, the Court has found that Appellant lacked prudential standing because, based on his own admission, he did not control the Debtor, and it thus necessarily follows that he could not be a party in interest because he did not have authority to assert the Debtor's rights on its behalf.  *See, e.g.*, *In re Delta Air Lines, Inc.*, 386 B.R. 518, 529 (Bankr. S.D.N.Y. 2008) (explaining that generally parties in interest with "standing to assert a fraud claim, such as a claim under [§] 1144, are the parties that were themselves defrauded" or others whose "interests are . . . sufficiently aligned with the allegedly defrauded").

Appellant's assertion that he is a party in interest because he "has spent his entire life as part of the Mosdos Chofetz Chaim congregation" and "resided on the property owned by the [Debtor]" is a non-sequitur, as Plaintiff did not allege in the Complaint that *he* was defrauded. (Appellant's Br. 35.)  *See In re Delta*, 386 B.R. at 529.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, as noted, "[i]n adjudicating a Rule 12(b)(6) ["Rule 12(b)(6)"] motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

The pleading requirements of Rule 8 and Rule 12(b)(6) are made applicable in adversary proceedings by Bankruptcy Rule 7008 and 7012, respectively.  *See, e.g.*, *In re Ridley*, 453 B.R. 58, 62 (Bankr. E.D.N.Y. 2011).

Additionally, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") sets forth a heightened pleading standard for allegations of fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.*  "[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quotation marks omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  But because courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290 (alterations in original) (citations and quotation marks omitted).  "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quotation marks and citations omitted).  The pleading requirements of Rule 9(b) are made applicable to adversary proceedings by Bankruptcy Rule 7009.  *See Ridley*, 453 B.R. at 62.

Appellant argues that the Bankruptcy Court erred by reviewing the Complaint on a paragraph-by-paragraph basis to determine if each allegation complied with the requirements of

Rule 9(b) because there is no requirement that a plaintiff provide "multiple properly plead allegations of fraud[,] one is sufficient [to state a claim]." (Appellant's Br. 39.) However, Appellant willfully misreads the Bankruptcy Court's ruling in this regard. The Bankruptcy Court was clear that it found only the single allegation concerning the Weintraub ballot sufficient to satisfy Rule 9(b). (Appellant's App. A-462–65.) The Court agrees with the Bankruptcy Court's assessment of Appellant's Complaint, as only the allegation concerning the Weintraub ballot sufficiently describes the speaker, the alleged fraudulent statement, when and where this statement occurred, and why the statement was fraudulent. *See Lerner*, 459 F.3d at 290. As the Bankruptcy Court correctly found, Appellant's other allegations concerning fraud were conclusory. (Appellant's App. A-462–64.)

Moreover, the Bankruptcy Court then proceeded, based on the sole sufficient allegation of fraud, to assess whether Appellant had stated a claim for fraud under § 1144 and found Appellant's Complaint was deficient because, even taking all of Appellant's allegations as true and assuming Weintraub's ballot should have been disregarded as fraudulent, the Plan would still have been confirmed because the requirements of 11 U.S.C. 1129(a)(10) would have been met, as Class 4 would still have approved the Plan. (Appellant's App. A-466.) Appellant does not appear to object to this finding. (*See generally* Appellant's Br.)

The Court therefore affirms the Bankruptcy Court's decision to dismiss Appellant's Complaint.

### 2. Denial of Appellant's Motion To Amend

Appellant argues that the Bankruptcy Court incorrectly denied his Motion To Amend his Complaint because it improperly assessed the fraudulent transaction or occurrence alleged, focusing narrowly on the specific instances of fraud rather than the overall transaction. (Appellant's Br. 44.) Appellant asserts that the transaction alleged in the Complaint was that

17

"the fraudulent procurement of the confirmation order by means of ballot fraud[,]" along with the specific example of the forged Weintraub ballot; Appellant argues that the Amended Complaint asserted the same transaction of ballot fraud but included several more examples.  (*Id.* at 44–45.)  The Court finds this argument meritless.

Under Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), a party may relate an amended complaint back to the date of the original filing when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* 15(c)(1)(B).[8]  "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (per curiam) (internal quotation marks omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 461 (S.D.N.Y. 2013) (same).  Thus, a court must determine "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86–87 (2d Cir. 1999) (internal quotation marks omitted).  "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006).  On the other hand, "even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." *Id.* (internal quotation marks omitted); *see also Brown v. Leonarde*, No. 11-CV-35, 2013

---

[8] Rule 15 is made applicable to adversary proceedings through Bankruptcy Rule 7015. *See*, *e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018).

WL 1866851, at *7 (W.D.N.Y. May 1, 2013) (same); *In re M. Fabrikant & Sons, Inc.*, 480 B.R.

480, 492 (S.D.N.Y. 2012) (explaining that "if the transaction is different in kind from those

originally alleged, or if new facts and transactions are alleged, the new allegation does not relate

back"), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).

Where fraud is alleged, "the law is clear that each preferential and fraudulent transaction

is treated separately and distinctly[,]" and "[p]roof offered for one transaction does not govern as

to another and, as such, relation back cannot be ordered between different transactions merely for

being similar or arising from the same conduct." *Fabrikant & Sons*, 480 B.R. at 492 (citing *In re

360networks (USA) Inc.,* 367 B.R. 428, 429 (Bankr. S.D.N.Y. 2007) and then *In re Metzeler*, 66

B.R. 977, 984 (Bankr. S.D.N.Y. 1986)).  An overly general original complaint does not provide a

defendant with sufficient notice as to what facts it is to defend against, and, therefore, such

general allegations cannot be the basis for later amended pleadings.  *See id.* at 493 (finding

amended complaint did not relate back where only reference to preferential transactions in

original complaint was a single general reference to the proceeds of multiple transactions that

occurred over a period of years); *Fair Hous. in Huntington Comm. v. Town of Huntington*, No.

02-CV-2787, 2010 WL 2730757, at *7 (E.D.N.Y. July 8, 2010) (finding that the original

complaint's general reference to the town's "ongoing exclusionary housing practices" was

insufficient to place defendants on notice for all future alleged discriminatory acts with regard to

housing within the town).

The Court finds that the Bankruptcy Court correctly held that the additional allegations in

the Amended Complaint did not relate back to those in the Complaint, because Appellant alleged

additional transactions which were in no way referenced in the Complaint.  In the Amended

Complaint, Appellant sought to make a host of new allegations involving fraud on the part of

parties who were not even referenced in the Complaint and, in the cases of Beyman and Leibov, alleged entirely new theories of fraud based on conduct entirely unrelated to and unlike the ballot fraud alleged to have occurred in the Weintraub ballot.  (*Compare* Appellant's App. A-3–7, *with id.* A-231–48.)  Courts have been unwilling to find that new allegations relate back where the allegations of fraud involved the same parties but different factual circumstances, thus the Court finds that the Bankruptcy Court was entirely correct to deny the Motion To Amend given that Appellant's new allegations involved both new parties and unrelated factual averments.  *See, e.g.*, *839 Cliffside Ave, LLC v. Deutsche Bank Nat'l Tr. Co. as Tr. for First Franklin Mortg. Loan Tr. 2006-FF3, Mortg. Pass-through Certificates, Series 2006-FF3*, No. 15-CV-4516, 2017 WL 11723912, at *6 (E.D.N.Y. Aug. 25, 2017) (finding counterclaims alleged in amended pleading did not relate back to initial pleading because initial counterclaims involved claims only concerning repayment of carrying costs for property at issue, whereas amended counterclaims also sought repayment of underlying mortgage and interest on the property); *Flagstar Bank, FSB v. Ticor Title Ins. Co.*, 660 F. Supp. 2d 346, 353 (D. Conn. 2009) (finding amended negligence claim did not relate back where initial negligence claim was premised on defendant's failure as principal to properly train agent, while amended claim alleged defendant's negligence directly).[9]

---

[9] Appellant additionally argues that the Bankruptcy Court erred when it determined that the Motion To Amend should be denied given the likelihood of undue prejudice to third parties, including the Debtor, because Rule 15 required that the Bankruptcy Court consider only whether there would be prejudice to non-moving parties.  (Appellant's Br. 47–53.)  However, it is undisputed that Appellant sued the Debtor in the adversary proceeding, (Appellant's App. A-3), and thus that the Bankruptcy Court properly considered the likelihood of prejudice to the Debtor—particularly given that the Debtor had exited bankruptcy almost two and a half years prior—in denying the Motion To Amend.  *See Pearson Educ., Inc. v. Heliosbooks, Inc.*, No. 17-CV-203, 2022 WL 970454, at *4 (S.D.N.Y. Mar. 31, 2022) (noting that "[p]rejudice to persons outside of the litigation is not material to the Rule 15 inquiry.") (citing *Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co.*, No. 20-CV-7397, 2021 WL 5647790, at *1 (S.D.N.Y. Nov. 30, 2021)).

III.  Conclusion

For the reasons stated above, the Orders of the Bankruptcy Court are affirmed.  The Clerk

of Court is directed to terminate the pending appeal and close this case.


SO ORDERED.


Dated:    September 22, 2023
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

The Bankruptcy Court's reference to third parties arose from its explanation of how granting the Motion To Amend would also be directly contrary to the principles of finality contained in § 1144, which provides that a bankruptcy court may enter an order revoking a confirmation order only where the order "contain[s] such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation."  *Id.*  However, such an order may not be entered where a bankruptcy court cannot protect those interests.  *See, e.g., In re Terrestar Corp.*, No. 11-10612, 2015 WL 5719469, at *5 (Bankr. S.D.N.Y. Sept. 29, 2015) (granting motion to dismiss complaint seeking revocation of confirmation order on the basis of equitable mootness in part because the "[confirmation] [p]lan was substantially consummated . . .[,] . . . numerous transactions had taken place in reliance on the [p]lan, [and] . . . it would be inequitable to revoke the [c]onfirmation [o]rder for [the debtor], creditors, banks, and numerous other interested parties"); *Salsberg v. Trico Marine Servs.,* 343 B.R. 68, 74 (Bankr. S.D.N.Y. 2006) (dismissing an action brought under Section 1144 because even if the plaintiff did prove fraud, the court could not fashion a remedy that met the requirements of Section 1144).

The Bankruptcy Court thus properly considered whether Appellant could succeed on the merits of his claim in reaching the conclusion that the Motion To Amend must be denied as futile.  *See, e.g., Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), *abrogated on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").  The out-of-circuit cases Appellant cites to argue the Bankruptcy Court could have fashioned relief without prejudice to third parties are not binding on the Court and are also unpersuasive given the undisputed factual record.  (Appellant's Br. 52–53.)